UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-307-KSF

CAROLYN PENDLETON                                                                               PLAINTIFF

v.                                        **OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security                                                                              DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Carolyn Pendleton, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits ("DIB") based on disability. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Pendleton filed her claim for a period of disability and disability insurance benefits on September 6, 2007, alleging an onset date of March 1, 2003 [TR 16, 126-33]. After a hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on February 12, 2010 [TR 16-28]. Pendleton subsequently requested review by the Appeals Council. The Appeals Council denied Pendleton's request for review on September 17, 2011 [TR 1]. She has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

Based on Pendleton's earnings, she acquired sufficient quarters of coverage to remain insured through December 31, 2007. As of that date, Pendleton was fifty years old [TR 146]. She has a GED and has completed some community college. She also has worked as a paralegal [TR 45]. Pendleton claims that she became disabled on March 1, 2003 due to physical and emotional issues [TR 74].

In support of her application for DIB benefits, Pendleton relies on various medical records and mental health records. Pendleton first relies on the records of her treating physician, Ray G. Hays, M.D. At an August 2003 checkup at the Lexington Clinic, Dr. Hays stated that Pendleton reported a history of anxiety neurosis, but that she rarely required medication, taking Xanax only occasionally. She denied any other difficulties and stated that she was getting along fairly well. His physical examination revealed no abnormalities [TR 235].

At a September 1, 2003 follow-up appointment with Dr. Hays, she complained of left knee pain. An X-ray was negative, but Dr. Hays noted small effusion and minimal crepitus. He diagnosed probable left knee osteoarthritic changes and recommended non-steroidal medications.

During a February 11, 2004 follow-up appointment with Dr. Hays, Pendleton reported difficulty with her marriage. Dr. Hays diagnosed depression with anxiety, prescribed Lexapro, continued her on Xanax as needed, and advised her to discuss matters with her husband [TR 234]. She followed-up again on October 5, 2004 and reported uncontrollable panic attacks, but denied other difficulties [TR 233]. At her January 12, 2005 follow-up, Pendleton stated that she was much better with the medication, was feeling a whole lot better, and that she rarely had a panic attack. He continued her on Lexapro and Xanax [TR 232]. Again, on April 27 and August 15, 2005, Pendleton reported to Dr. Hays that she was doing reasonably well and denied any new difficulties [TR 231,

229]. On November 22, 2005, she reported to Dr. Hays that she had some problems with her daughter recently, and this was making her anxiety attacks worse, but that she was doing reasonably well [TR 224]. She also reported doing reasonably well in December 2005 [TR 223].

At a January 20, 2006 follow-up appointment with Dr. Hays, Pendleton again reported that her daughter's problems were causing her a lot of stress, but that she was trying to handle this without medications [TR 222]. These problems with her daughter apparently continued, and on April 21, 2006, Dr. Hays prescribed Wellbutrin XL, and continued her on Xanax as needed [TR 221]. At an August 18, 2006 follow-up appointment at the Lexington Clinic, Pendleton reported that she was doing well on Cymbalta, with decreased anxiety and panic attacks. Her physical examination was normal, and she was oriented in all spheres, with normal judgment, insight and mood [TR 215]. On December 12, 2006, she reported increased anxiety and depression. She was described as in no acute distress and no physical abnormalities were noted [TR 212].

Pendleton was also treated by Martin Gebrow, M.D. on several occasions from July 2006 until August 2007. While his notes are largely illegible, they reveal that Dr. Gebrow prescribed medications including Cymbalta and Xanax [TR 422-434].

On October 4, 2006, Pendleton was evaluated by Maxhar Salim, M.D. at the Outpatient Behavioral Health Unit at Baptist Regional Medical Center. She reported feeling depressed and anxious for the past three years, based in part on her husband's infidelity and her religious beliefs [TR 281-83]. During follow-up visits in 2007, Pendleton continued to report anxiety problems based on her family life. In February 2007, Dr. Salim started her on Prozac, and continued her on Xanax and Ambien [TR 291].

On June 20, 2007, Pendleton was voluntarily admitted to St. Mary's Medical Center Behavioral Health Unit due to increased anxiety [TR 258-75]. Her physical and neurological examinations were normal, and there was no evidence of cognitive impairment. She was articulate, calm, and cooperative, had logical thinking, was oriented in all spheres, and demonstrated average intellectual functioning and a generally good fund of knowledge. She was diagnosed by Mercy Isang, M.D. with panic disorder without agoraphobia, major depressive disorder without psychosis, severe stressors related to marital conflict, and decreased coping skills. A GAF score of 30 was assessed, and Dr. Isang estimated a 3 to 7 day inpatient stay to resolve her mood and anxiety symptoms [TR 265-67].

Pendleton was subsequently treated in September 2007 after she twisted her knee when she fell into a post hole in her yard. X-rays of her left ankle and left knee revealed mild osteoarthritis, and X-rays of her left tibia and fibular revealed soft tissue swelling at the mid-leg, with no fracture. On October 24, 2007, Dr. Ronald Bellhasen performed a partial lateral menisectomy and chondroplasty of the medical femoral condyle and lateral femoral condyle of her left knee [TR 307-14].

During this time, Pendleton attended medication management sessions with Kate Hume, M.A., M.S.N., Advanced Practice Nurse, Adult Mental Health [TR 341-58]. On March 15, 2007, Hume diagnosed Pendleton with panic disorder with agoraphobia, and assigned her a Global Assessment of Functioning ("GAF") score of 60. Pendleton was prescribed Emsam, Xanax, Gabitril, and Ambien [TR 341]. She continued with monthly sessions with Hume, and Hume continued to assess her with a GAF score of 60. On January 23, 2008, Pendleton reported improved mood since starting Invega, and noted she had decreased mood lability and decreased anxiety attacks. However,

4

Hume assessed a GAF score of 58/60, and sent Pendleton to a therapy session with Scott Corum [TR 352]. Her GAF score, as assessed by Hume, continued at 58/60 through April 2, 2008.

Pendleton was initially seen by Corum on January 7, 2008 and diagnosed with Major Depressive Disorder, Recurrent, Moderate. After attending eighteen individual sessions through December 2009, Corum noted that her depressive symptoms had lessened, although she reported an increase in panic and anxiety attacks [TR 419]. In a letter dated February 26, 2008, Hume diagnosed Pendleton with bipolar disorder, mixed, and panic disorder with agoraphobia. Due to the severity of her symptoms, Hume stated that Pendleton had poor work performance when she attempted to work in the recent past. She assessed Pendleton with a poor or no ability in most areas of making performance adjustments and making personal/social adjustments [TR 355]. In a subsequent letter dated October 13, 2009, Hume noted that although Pendleton was currently stable, her psychiatric condition often decompensated, and her abilities to work, concentrate, and be amongst strangers varied due to the nature of her psychiatric illness [TR 385].

A consultative psychological examination was performed by Donna Abbott, M.A., Senior Psychological Examiner, on December 14, 2007. At that time, Pendleton reported disability due to severe depression, and nerves with daily anxiety attacks. She indicated that her current medications were Emsam, Lamictal, Klonopin, Xanax, Ambien, Seroquel, Aleve, and Prilosec. Her mental examination revealed that she was oriented in all spheres, conversational, demonstrated adequate memory processes, good short term memory, was able to attend and concentrate, appeared rational and alert, and her responses suggested average intellectual functioning. She was diagnosed with personality disorder, not otherwise specified, and a GAF score of 60 [TR 314-20].

Separate reviews of the evidence in Pendleton's file were conducted by Julie Jennings, Ph.D. and Richard Milan, Ph.D.,on January 24, 2008. Based on their review, both psychologists assessed her with mild to moderate difficulties in maintaining social functioning and concentration, persistence, or pace for the period from March 1, 2003 to December 31, 2007. Despite these limitations, they opined that Pendleton was able to meet the basic mental demands of competitive work on a sustained basis [TR 321-40, 359-75]. On July 21, 2008, Robert McGuffin, M.D. reviewed Pendleton's file and assessed her as able to perform the full range of medium exertion work. He opined that the medical evidence established a medically determinable impairment of osteoarthritis [TR 379-84].

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)   If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2)   If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3)   If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4)   If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5)   Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that

6

>accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The ALJ began his analysis at step one by considering whether Pendleton has engaged in substantial gainful activity during the period from her alleged onset date of March 1, 2003 through her date last insured of December 31, 2007. Although the ALJ noted that the record contained evidence that Pendleton had income in 2005 from self-employment and her work as a paralegal, the ALJ did not find Pendleton not disabled at this step, and continued on to step two [TR 18]. At step two, the ALJ found that Pendleton suffers from the severe impairments of obesity, borderline personality traits, affective disorder, anxiety disorder, and ADHD [TR 18]. Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments. In making this determination, the ALJ considered Pendleton's obesity as an aggravated factor to her combined impairments [TR 19].

Next, the ALJ determined Pendleton's residual functional capacity ("RFC"). An RFC is the assessment of a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). In this case, the ALJ found that Pendleton has the RFC to perform the exertional and nonexertional demands of medium work with the following exceptions: limited to simple, unskilled work, could not work with the public but could work in small groups, and could not work where production quotas were required [TR 25].

At the fifth and final step, relying on the testimony of the Vocational Expert ("VE") and taking into consideration Pendleton's age, educational background, past relevant work experience, and residual functional capacity ("RFC"), the ALJ found that Pendleton was capable of making a successful adjustment to work existing in significant numbers in the national economy and on this basis denied her claim for DIB. [TR 291]

The ALJ's decision that Pendleton is not disabled became the final decision of the Commissioner when the Appeals Council subsequently denied her request for review on September 17, 2011 [TR 1]. Pendleton has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

II.     **GENERAL STANDARD OF REVIEW**

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards.

*See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

To be eligible for DIB, Pendleton must prove she became disabled prior to the expiration of her disability insured status on December 31, 2007. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101, 404.131, 404.315(a); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). A showing that an impairment became disabling after the expiration of her insured status is insufficient to establish eligibility for DIB. *King v. Secretary of Health and Human Services*, 896 F.2d 204, 205-06 (6th Cir. 1990). In this case, the relevant time period of adjudication is from March 1, 2003 (the date of her application) to December 31, 2007 (her date last insured).

### III.   ANALYSIS

On appeal, Pendleton argues that substantial evidence does not support the Commissioner's decision in this case for several reasons. First, Pendleton argues that the ALJ erred at step one by noting that she had engaged in work activity since her alleged onset date. This argument fails because the ALJ did not find Pendleton disabled due to substantial gainful activity. Rather, the ALJ

9

found in Pendleton's favor at step one, and proceeded on to the remaining steps of the sequential evaluation process [TR 18].

Second, Pendleton argues that the ALJ failed to include the additional severe impairments of "back pain" and "knee pain" at step two. This argument also fails because the ALJ did not find Pendleton not disabled at step two. The ALJ concluded that Pendleton had the severe impairments of obesity, borderline personality traits, affective disorder, anxiety disorder, and ADHD [TR 18]. The fact that the ALJ found these severe impairments but did not include "back pain" or "knee pain" is irrelevant because a failure to find that a particular impairment was severe is not reversible error if the ALJ found other severe impairments. *See Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *McGlothin v. Commissioner of Social Security*, 2008 WL 4772077, at *6 (6th Cir. Oct. 31, 2008)(noting it became "legally irrelevant" that an ALJ determined some impairments not severe because the ALJ found the claimant had some severe impairments and proceeded to complete the remaining steps of the sequential evaluation process).

Third, Pendleton argues that the ALJ failed to properly assess her mental RFC. Specifically, Pendleton points to Hume's opinions dated July 9, 2008 [TR 358] and October 13, 2009 [TRT 385], which state that Pendleton became disabled in 2003. While the ALJ discussed these opinions, the ALJ properly rejected them for the following reasons. A nurse is not an acceptable medical source; thus, Hume's opinion is not entitled to any special weight or consideration. 20 C.F.R. § 404.1513(a), (d)(1), § 404.1527. Moreover, Hume's opinions are not limited to the period of adjudication in this case, ending on December 31, 2007. Finally, Hume's opinions are opinions of disability, which are reserved for the Commissioner. *See* 20 C.F.R. 404.1527(e); Social Security Ruling 96-5p, 61 Fed. Reg. 34,471, 1996 WL 374183 (1996).

Pendleton also argues that the ALJ erred in not giving weight to Corum's opinion expressed in a letter dated December 29, 2009 [TR 419]. According to that letter, he conducted an initial intake in January 2008 and conducted eighteen sessions with Pendleton through the end of 2009. By these dates, any opinion Corum expresses falls outside the period of adjudication in this case. Additionally, a licensed clinical social worker is not considered an acceptable medical source and thus is not entitled to any special consideration. *See* 20 C.F.R. § 404.913(a), (d)(1).

Even if these opinions were entitled to some considerations by the ALJ, they are inconsistent with the other evidence of record and substantial evidence supports the ALJ's mental RFC finding. *See* 20 C.F.R. § 404.1546(c). Dr. Hays' treatment records, as described above, reveal treatment for depression and anxiety, but consistently state that Pendleton was doing well. Her treatment by Dr. Salim in October 2006 at Outpatient Behavioral Health also included treatment for depression and anxiety, but at discharge he rated her GAF score a 60-65, showing some mild symptoms, but generally functioning well [TR 279]. While Pendleton was hospitalized for five days in June 2007, she was quickly stabilized [TR 348]. Records from Nurse Hume in 2007 further reveal that she was feeling better, and GAF scores of 60 [TR 347].

Also inconsistent with the opinions of Hume and Corum is the psychological consultative examination performed by Donna Abbott, M.A. Abbott opined that Pendleton was able to attend and concentrate and maintain a simple routine, although she may have some difficulty in the area of social interaction and adapting to change and dealing with stress [TR 318]. Abbott ruled out bipolar disorder and diagnosed Pendleton with personality disorder, not otherwise specified, and gave her a GAF score of 60 [TR 318]. Additionally, the state agency consultants, Julie Jennings, Ph.D. and Richard Milan, Ph.D. concluded that Pendleton was not disabled [TR 340, 378]. Based on their

review of the record, they opined that she was able to meet the basic mental demands of competitive work on a sustained basis despite any limitation due to her mental health. These state agency consultants are considered experts in the Social Security disability programs and their opinions are entitled to great weight if they are supported by the evidence, 20 C.F.R. § 404.1527(f)(2), SSR 96-6p, as they are in this case.

There is substantial evidence in the record to support the ALJ's conclusion that Pendleton could perform medium work with the following exceptions: she is limited to simple, unskilled work, cannot work with the public, but can work in small groups, and cannot work where production quotas are required. For the reasons set forth above, the ALJ properly rejected Hume and Corum's opinions.

Finally, Pendleton contends that the ALJ erred in relying on the testimony of the VE. Based on her RFC and the testimony of the vocational expert, the ALJ found that Pendleton could not return to her past relevant work [TR 26]. In response to a hypothetical question that included the ALJ's assessment of Pendleton's RFC, the VE identified examples of jobs that she could perform. Pendleton, however, contends that the hypothetical question should have included Dr. Jennings' findings in section I of her Mental Residual Functional Capacity Assessment. However, the form itself indicates that the checkblocks in this section do not reflect a claimant's RFC, but rather summary conclusions. Jennings' opinion regarding Pendleton's RFC are contained in section III [TR 338]. There is simply no support for Pendleton's argument that the ALJ should have included the section I findings in the hypothetical question to the VE. The hypothetical questions posed to the ALJ included all the physical and mental limitations contained in Pendleton's RFC, which is

supported by substantial evidence. Accordingly, the ALJ properly relied on the VE's testimony to find that Pendleton could perform other work and was not disabled.

**IV. CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE #6] is **DENIED**;

(2) the defendant's motion for summary judgment [DE #7] is **GRANTED**;

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards;

(4) a judgment consistent with this Opinion & Order will be entered contemporaneously.

This May 3, 2012.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge

13